# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF WISCONSIN

CLERK USOC EDWI

2024 JUN 18 P 12: 22

DIONTE NOWELS,

    Plaintiff,

v.

MARY MOORE, sued in her

individual capacity, and sued

in her official capacity,

    Defendant.

Case No.: _____24-cv-754_____

## CIVIL RIGHTS ACTION COMPLAINT FILED UNDER 42 U.S.C. §1983

## I. JURISDICTION & VENUE

1.    This is a civil rights action authorized by 42 U.S.C. §1983 to redress the deprivation, under

the color of state law, of rights secured by the Constitution of the United States of America, by

Dionte Nowels, a pro se litigant with very limited help from prison litigators. This Court has

jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. §1343(a)(3). Plaintiff Dionte Nowels's claims

for injunctive relief are authorized by 28 U.S.C. §2283 and 28 U.S.C. §2284, and Rule 65 of the

Federal Rules of Civil Procedure.

2.     The Eastern District of Wisconsin is an appropriate venue under 28 U.S.C. §1391(b)(1) and

28 U.S.C. §1367 invoking supplemental jurisdiction to review a state Tort Claim of

negligence/medical malpractice because Plaintiff Dionte Nowels was housed at Waupun

Correctional Institution ("WCI") at the time of the Constitutional and State Tort Law

deprivations stated herein in this complaint, and WCI is located in the Eastern District of

Wisconsin. Thus, at this time, Plaintiff Nowels, proceeding pro se, respectfully requests that the

Court invoke the aforementioned jurisdiction.

## II. PARTIES

3.     Plaintiff Dionte Nowels ("Nowels") was at all times mentioned herein this Complaint, a

prisoner of the State of Wisconsin, in the custody of the WI-DOC, and is now housed at Fox

Lake Correctional Institution.

4.     Defendant Mary Moore ("Moore"), at all times relevant to and mentioned in this

Complaint, is an Advanced Practitioner Nurse Prescriber ("APNP") at Waupun Correctional

Institution ("WCI").  At all times relevant to and mentioned in this Complaint, Moore was

Nowels's Advanced Care Provider ("ACP"), acting under the color of state law.

5.     Defendant Moore is sued individually and in her official capacity.  At all times mentioned

in this Complaint Defendant Moore acted under the color of state law.

## III. PREVIOUS LAWSUIT

6.     On or about January 20, 2021, Plaintiff Nowels filed a Complaint in the Eastern District of

Wisconsin under 42 U.S.C. §1983 against Defendant Moore and then Corrections Sergeant

2

Linda Schneider for the deprivation, under the color of state law, of the rights granted to the plaintiff via the United States Constitution; Case No.: **21-CV-89**.

7.     The Honorable Magistrate Judge Stephen C. Dries chose to invoke supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over the plaintiff's negligence/medical malpractice claim against Defendant Moore in the aforementioned case.

8.     In Case No.: **21-CV-89,** Plaintiff Nowels respectfully requested the United States District Court to grant injunctive relief removing him from under the medical care of Defendant Moore. Nowels's request was subsequently denied.

9.     The United States Court of Appeals for the Seventh Circuit currently has jurisdiction over Case No.: **21-CV-89** as Nowels awaits decisions regarding his appeal of the lower court granting summary judgment in Moore's favor, and a motion to dismiss for failure to prosecute in Schneider's favor.


## IV. FACTS

10.     Plaintiff Nowels suffers from extreme constipation, extreme abdominal pain, rectal issues (i.e. hemorrhoids, unidentified rectal discharge), and has been prescribed a multitude of medications and received diagnostic testing for the aforementioned serious medical needs long before June 15, 2021. (See Exhibit-A-0001 through A-0004 Health Services Unit ("HSU") Progress Notes establishing aforementioned serious medical needs; See Exhibit-B-0001 & B-0002 HSU/Inmate Patient Information Sheet and Medical Imaging for proof of scheduling of colonoscopy and execution of abdomen x-ray before June 15, 2021; See Exhibit-C-0001 through

C-0003 for proof of bowel medications prescribed to Plaintiff Nowels before the prescription of Desipramine Hydrochloride).

11.     Plaintiff Nowels suffers from extreme pain in multiple areas of his body from injuries he sustained from falling down a flight of stairs on August 11, 2019, and a fist fight on May 9, 2022.

12.     On or about January 20, 2021, Nowels filed a Complaint in the Eastern District of Wisconsin under 42 U.S.C. §1983 against Defendant Moore and the Corrections Sergeant Linda Schneider for the deprivation, under the color of state law, of the rights granted to him by the Eighth Amendment of the United States Constitution; Case No.: **21-CV-89** also included a State Tort Claim of medical negligence/malpractice against Moore.

13.     On or about June 15, 2021, Nowels was seen in WCI's HSU by Moore for pain in multiple areas of his body including his back, left thumb, neck and left knee.

14.     During the aforementioned appointment Moore told Nowels that she was prescribing him a medication called Desipramine Hydrochloride for his pain. At this time, Nowels specifically told Moore that if the aforementioned medication causes constipation then he'd prefer to explore other options because of his history of extreme constipation, extreme abdominal pain and rectal issues. Nowels subsequently requested a list of all side effects related to this medication. Moore told Nowels that he did not need the medication information because she knew that Desipramine Hydrochloride doesn't cause constipation and prescribed it to him without conducting a physical exam on anything but Nowels's thumb. (See Exhibit-D-0001 for evidence of Desipramine Hydrochloride being prescribed on June 15, 2021).

15.     On or about July 12, 2021, Nowels was seen in WCI's HSU by Moore for a pre-op evaluation for his upcoming ACL reconstruction surgery.

16.     During this aforementioned appointment Nowels informed Moore of his increased constipation, increased abdominal pain and increased hemorrhoid pain and unidentified rectal discharge. He also expressed that the bowel medications that he was taking were not working and, in fact, were making his pain and constipation worse, and that he was experiencing an extreme loss of appetite. He also asked her was she positive that Desipramine Hydrochloride doesn't constipation, and requested a list of all side effects related to this medication. Moore did not conduct a physical exam of Nowels's abdomen, rectum or anus, rather, she told him that the aforementioned medication did not cause constipation as she was allegedly "reading the list of side effects from the computer as [they spoke]" and that he should continue to take the bowel medications that he was prescribed. (See Exhibit-D-0002 Progress Notes as it pertains to the aforementioned app.)

17.     On or about July 12, 2021, Nowels filed a Health Services Request ("HSR") complaining about his constipation, abdominal pain and rectal issues. Nowels also requested an Enema via the aforementioned HSR. (See Exhibit-E-0001 for aforementioned HSR).

18.     On or about July 14, 2021, Nowels was seen in WCI's HSU by Donna Larson ("Larson") regarding his problems stated in ¶ 17.

19.     During the aforementioned appointment Nowels informed Larson of his increased constipation, increased abdominal pain and increased hemorrhoid pain and unidentified rectal discharge. He also expressed that the bowel meds that he was taking were not ineffective and, in fact, making his aforementioned serious medical needs worse. Larson did not conduct a physical

exam on Nowels's abdomen, rectum or anus, rather, she simply told him he should continue to take the bowel meds as prescribed and gave him a Magnesium Citrate cocktail. (See Exhibit-D-0003 Progress Notes as it pertains to the aforementioned appointment.)

20. On or about July 21, 2021, Nowels was seen in WCI's HSU by Nurse Ashley Hasaleu regarding his extreme constipation, abdominal pain and rectal issues. She informed Nowels that he would be seeing Moore soon and gave him a Magnesium Citrate cocktail. (See Exhibit-D-0004 & D-0005 Progress Notes as it pertains to the aforementioned appointment.)

21. On or about July 30, 2021, Nowels was seen in WCI's HSU by Dr. Jean-Pierre regarding thumb pain, extreme constipation, abdominal pain and rectal issues.

22. During this aforementioned appointment, Nowels informed Dr. Jean-Pierre of his increased constipation, increased abdominal pain and increased hemorrhoid pain and unidentified rectal discharge. He also expressed that the bowel medications he was prescribed were ineffective, and, in fact, were making his constipation and pain worse. Dr. Jean-Pierre did not conduct a physical exam of Nowels's abdomen, rectum or anus, rather, she simply told him he should continue to take the bowel medications he was prescribed, and scheduled an MRI for his left thumb. (See Exhibit-D-0006 Progress Notes as it pertains to the aforementioned appointment.)

23. On or about August 16, 2021, Nowels wrote a DOC-643 Interview/Information Request ("Request Slip") to WCI's HSU regarding his abdominal pain. (See Exhibit-E-0002.)

24. On or about August 17, 2021, Nowels wrote a HSR regarding his abdominal pain. (See Exhibit-E-0003 for aforementioned HSR.)

25. On or about August 21, 2021, Nowels administered an Enema to himself with no results. Nowels was in so much pain that he requested the third shift sergeant, and the first shift sergeant the following day, to contact HSU.

26. On or about August 22, 2021, Nowels was seen in WCI's HSU on an emergency pass by Nurse Brian Schertz regarding the fact that he hadn't had a bowel movement in approximately ten days, was experiencing extreme abdominal and hemorrhoid pain, and was now experiencing nausea, and vomiting. Schertz asked Nowels to rate his abdominal and hemorrhoid pain on a scale from 1-10; Nowels rated his pain at an 8. Nowels was given Magnesium Citrate cocktail. (See Exhibit-D-0007 Progress Notes as it pertains to the aforementioned appointment.)

27. On or about August 24, 2021, Nowels was seen WCI's HSU by Larson regarding his extreme constipation, extreme abdominal pain, rectal issues, nausea and vomiting.

28. During the aforementioned appointment Nowels informed Larson of his increased constipation, increased abdominal pain and increased hemorrhoid pain and unidentified rectal discharge. Nowels also informed her that the bowel medications he was taking were ineffective, and in fact, making his constipation and pain worse, and that he had an extreme loss of appetite. Larson didn't conduct a physical exam of Nowels's abdomen, rectum or anus, rather, she simply told him he should continue to take the bowel medications he was prescribed. (See Exhibit-D-0008 & D-0009 Progress Notes as it pertains to the aforementioned appointment.)

29. On or about August
24, 2021, Nowels concocted, attached to a Request Slip and sent a missive to the HSU Manager Robert Weinman regarding his constipation, abdominal pain and rectal issues and the inadequate

treatment he was receiving regarding said serious medical needs. (See Exhibit-E-0004 & E-0005 for aforementioned Request Slip and attached missive.)

30.    On or about September 2, 2021, Nowels wrote multiple Request Slips and a HSR regarding the extreme constipation he'd been experiencing and the ailments which had derived from it including, but not limited to; extreme abdominal pain, headaches, dizziness, nausea, loss of appetite and vomiting. (See Exhibit-E-0006 through E-0008 for aforementioned Request Slips and HSR.)

31.    On or about September 9, 2021, Nowels met with Nurse Pamela Dobbins ("Dobbins") regarding the issues stated in the Request Slips and HSR mentioned in ¶¶ 29 & 30. Nowels told Dobbins that his bowel medications were ineffective, however, she simply told him to continue to take the said bowel medications and gave him a Magnesium Citrate cocktail. (See Exhibit-D-0010 Progress Notes as it pertains to the aforementioned appointment.)

32.    On or about September 13, 2021, despite an immense increase in constipation, abdominal pain and rectal issues being Nowels's chief complaint regarding his health, Moore still chose to increase the dosage of Desipramine Hydrochloride, a medication that causes constipation. (See Exhibit-F-0001 Orders-Medications for proof of aforementioned medication dosage increase.)

33.    On or about September 14, 2021, Nowels wrote a HSR regarding extreme constipation and extreme abdominal pain. (See Exhibit-E-0009 for aforementioned HSR.)

34.    On or about September 18, 2021, Nowels wrote a Request Slip to the HSU Manager regarding the extreme constipation, extreme abdominal pain and the fact that the bowel medications he was prescribed were ineffective. (See Exhibit-E-0010 for aforementioned Request Slip to HSU Manager.)

35. On or about September 21, 2021, after more than two months of complaining about an extreme increased constipation, increased abdominal pain, increased hemorrhoid pain and unidentified rectal discharge, Moore finally met with Nowels in HSU regarding the aforementioned serious medical needs.

36. During the aforementioned appointment Nowels told Moore that the bowel medications he was prescribed were ineffective and, in fact, were making his condition worse. He also asked Moore was she sure that Desipramine Hydrochloride doesn't cause constipation. Moore didn't conduct a physical exam of Nowels's abdomen, rectum or anus, rather, she simply told him Desipramine Hydrochloride doesn't cause constipation and that he should continue to take the bowel medications he was prescribed and gave him a Magnesium Citrate cocktail. (See Exhibit-D-0011 Progress Notes as it pertains to the aforementioned appointment.)

37. On or about September 23, 2021, Nowels contacted HSU asking for all available information on Desipramine Hydrochloride. (See Exhibit-G-0001 for HSR with aforementioned request.)

38. On or about October 1, 2021, Nowels received the medication information for Desipramine Hydrochloride via institution mail and it showed, contrary to what Moore told him on multiple occasions, Desipramine Hydrochloride actually does constipation. (See Exhibit-G-0002 through G-0005 for all information on Desipramine Hydrochloride.)

39. On or about October 1, 2021, Nurse Whitney Pitzlin was summoned to the North Cell Hall by the second shift sergeant, Sergeant Wilson, because of the excruciating pain Nowels was experiencing in his abdomen and anus/rectum due to his extreme constipation. Nowels was

superficially examined and given a Magnesium Citrate cocktail. (See Exhibit-D-0012 for the Progress Notes regarding the aforementioned appointment.)

40. On or about October 5, 2021, Nowels wrote a Request Slip regarding the prescription of a medication (Desipramine Hydrochloride) that exacerbated his serious medical conditions and the lies Moore told Nowels in multiple appointments regarding the side-effects of said medications.

41. On or about October 7, 2021, Defendant Moore responded aforementioned Request Slip with more lies by saying, "you were prescribed many meds for constipation that was a [known] side effect of Desipramine." However, please remember that Nowels was prescribed said bowel meds before he was prescribed Desipramine Hydrochloride, making it impossible for the bowel meds to have been prescribed to alleviate the painful side-effects of Desipramine Hydrochloride. (See Exhibit-E-0011 Request Slip pertaining to ¶40 of this complaint; See Exhibit-C-0001 through C-0003 Orders-Medications for proof of prescribed bowel meds before June 15, 2021.)

42. On or about October 8, 2021, Nowels wrote a HSR begging to see his ACP regarding his extreme abdominal pain. (See Exhibit-E-0012 for aforementioned HSR.)

43. On or about October 13, 2021, Nowels finally met with Moore in WCI's HSU regarding his extreme constipation, extreme abdominal pain and rectum/anal problems.

44. During the aforementioned appointment, Nowels asked Moore why would she prescribe, continue the prescription of and even increase the dosage of medication (Desipramine Hydrochloride) that she was exacerbating his serious medical conditions, then lie about the medication's side-effects, Moore responded, "the day I no longer have to waste time fighting your lawsuits will be the day I'll be able to spend time ensuring you have the right medication." She then told Nowels she was discontinuing the medication in question, however, Nowels

informed her that he had already made the unilateral decision to stop taking the medication, then left Moore's office. (See Exhibit-D-001 Progress Notes pertaining to October 13, 2021, appointment with Moore; See Exhibit-H-0002 ¶4 Declaration of Terry Thomas for evidence of remarks made by Moore on October 13, 2021.)

45.    During the aforementioned appointment, Nowels was weighed and it was determined that he had lost nearly 30 pounds since he prescription of Desipramine Hydrochloride on June 15, 2021. This loss of weight was due to Nowels's consistent vomiting and lack of appetite. (See Exhibit-D-0013 Progress Notes pertaining to October 13, 2021, appointment with Moore.)

46.    Nowels serious medical needs of extreme constipation, extreme abdominal pain and rectal/anal issues did not begin to subside until he chose to stop taking the contraindicated medication of Desipramine Hydrochloride.

47.    As a result of Moore's malicious use of Desipramine Hydrochloride to retaliate against Nowels for filing a prior lawsuit against her, he was giving an excess amount of Magnesium Citrate to combat the side-effects of the aforementioned medication, although he had alerted HSU staff that it was extremely harsh on his stomach.

48.    Nowels was transferred to Waupun Memorial Hospital on February 2, 2022, where an endoscopy was performed on Nowels's stomach at which time he was diagnosed with gastritis.

49.    Nowels's gastritis was caused by the excess amount of Magnesium Citrate he was given to combat the abdominal issues he was experiencing due to the vindictive prescription of Desipramine Hydrochloride by Moore.

50. Nowels is still in pain and is prescribed medication to combat the pain he has from his gastritis, which can be treated but not cured. He is irreparably damaged.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

51. Nowels has indeed exhausted all administrative remedies with respect to all claims and all defendants. (See Exhibit-I-0001 & I-0002 for ICE and CCE receipts.)

## VI. LEGAL CAUSE OF ACTION

**FEDERAL CLAIMS**

CLAIM 1- EIGHTH AMENDMENT DELIBERATE INDIFFERENCE CLAIM- AGAINST ADVANCED PRACTITIONER NURSE PRESCRIBER MARY A. MOORE.

52. Plaintiff Nowels reincorporates paragraphs 1 through 50 as they are stated fully therein.

53. The Eighth Amendment safeguards the prisoner against a lack of medical care "that may result in pain and suffering which no one would serve any penological purpose." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285 (1976).

54. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Estelle*, supra, at 106; *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S. Ct. 2321 (1991).

55. A claim of deliberate indifference has an objective and subjective component. To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834, 1145 S. Ct. 1970 (1994); the Court

of Appeals for the Seventh Circuit has held that "serious medical needs" are not only conditions that are life threatening or that carry risks of permanent, serious impairment if left untreated, but also those in which the withholding of medical care results in needless pain and suffering. *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997).

56. First, it must be recognized that Plaintiff Nowels has presented enough evidence to support that he suffers from an objectively, sufficiently serious medical condition. The fact that his healthcare file indicates that he suffers from extremely painful constipation, extreme abdominal pain, extremely painful hemorrhoids, and an unidentified rectal discharge; once rated his pain for the aforementioned serious medical needs as high as an 8 on a scale from 1-10; has been prescribed a multitude of medications for these issues; and has even been hospitalized for these issues, clearly show that his needs are indeed sufficiently serious. Instructive here is, *Wheeler v. Wexford Health Source Inc.*, 2014 WL 12704388, at *7 (S.D. Ill. May 27, 2014); *King v. Maassen,* 2020 WL 619290 at *6; *Troya v. Wilson,* 807 Fed. Appx. 556, 558 (7th Cir. 2020); *Gutierrez v. Peters, supra*, at 1371 (extreme pain can qualify as a serious medical need.)

57. Although Nowels's chief complaint regarding his health care became those of an increase in extreme constipation, extreme abdominal pain and rectal/anal issues, Moore still chose to continue the prescription, and even increase the dosage of the contraindicated medication Desipramine Hydrochloride, all while secretly knowing that its side-effects were exacerbating Nowels's serious medical conditions. Never once did Moore entertain the thought of discontinuing Desipramine Hydrochloride until Nowels was finally made aware of its side-effects. The fact that Moore had sufficient knowledge of a significant risk to Nowels's health and safety, i.e. being prescribed a medication that was exacerbating his well document serious medical needs, but still chose to administer and perpetuate blatantly inappropriate medical

treatment by increasing the dosage of Desipramine Hydrochloride, clearly establishes deliberate indifference. *Edwards v. Snyder*, 478, F.3d 827, 831 (7th Cir. 2007); *Ralston v. McGovern,* 167 F.3d 1160, 1162 (7th Cir. 1999.)

58.     Although Nowels informed Moore that the laxatives and other gastrointestinal medicine were not working, but in fact, making his pain worse, she chose to simply continue the prescription of the aforementioned laxatives/medications, resorting to a course of treatment known to be ineffective. *Ruiz v. Williams*, 2018 WL 1460944 at *13; *Petties v. Carter*, 836 F.ed 722, 730 (7th Cir. 2016).

59.     When Plaintiff Nowels asked Moore, "why would you lie to me by telling me that Desipramine Hydrochloride doesn't cause constipation when in all actuality it does and I continuously complained of extreme constipation and it s side effects?" she responded, "the day I no longer have to waste time fighting your lawsuit will be the day I'll be able to spend time ensuring you have the right medication." This sarcastic response to Nowels's complaint clearly establishes sufficiently culpable state of mind and the subjective component for a claim of deliberate indifference to his serious medical needs. *Dixon v. Godinez*, 114 F. 3d 640, 645 (7th Cir. 1997); *Haley v. Gross*, 86 F.3d 630, 642 (7th Cir. 1996).

CLAIM 2- FIRST AMENDMENT RETALIATION CLAIM- AGAINST DEFENDANT ADVANCED PRACTITIONER NURSE PRESCRIBER MARY A. MOORE.

60.     Plaintiff Nowels reincorporates paragraphs 1 through 50 as they are stated fully therein.

61.     In order to state a cognizable retaliation claim under the First Amendment, a prisoner must ultimately show that: (1) he engaged in activity protected by the First Amendment of the United States Constitution; (2) he suffered deprivation that would likely deter First Amendment activity

in the future; and (3) the First Amendment was "at least a motivating factor" in the defendant's decision to take retaliatory action. *Holleman v. Zatecky,* 951 F.3d 873, 878 (7th Cir. 2020).

62.    In this case, plaintiff Nowels has indeed met the first prong of a retaliation claim, as at the center of this claim rests the fact that on January, 20, 2021, he engaged in activity that is protected by the First Amendment of the United States Constitution when he filed a claim under 42 U.S.C. §1983, against defendant Moore for being negligent and deliberately indifferent to his serious medical needs; Case No.: 21-CV-89. "Like others, prisoners have the constitutional right to petition the Government for redress of their grievances, which includes a reasonable right of access to the courts." *Hudson v. Palmer*, 468 U.S. 517, 523, 104 S. Ct. 3194 (1984) (quoting *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969)).

63.    In this case, plaintiff Nowels has indeed met the second prong of a retaliation claim. Defendant Moore prescribed, renewed the prescription of, and even increased the dosage of a pain medication that she knew was harmful to, and ultimately exacerbating, Nowels's already well documented constipation, abdominal pain and rectal problems. Upon prescribing said Desipramine Hydrochloride, and in additional appointments, Nowels asked Moore if the medication causes constipation because if it did then he'd rather try alternatives so his aforementioned conditions did not worsen. Not only did Moore lie to Nowels by telling him "no, Desipramine Hydrochloride does not cause constipation", she also chose to increase the dosage of said medication despite Nowels's constipation, abdominal pain and rectal issues worsening, becoming his chief complaint and leading to additional ailments, including but not limited to; unbearable constipation, extreme headaches, profuse vomiting, extreme nausea, extreme abdominal pain, extreme rectal pain, loss of appetite, weight loss, etc. Instead of Moore simply discontinuing Desipramine Hydrochloride, she perpetuated the prescription of harmful and

ineffective laxatives. Moore retaliated against Nowels's previous action against her of negligence and deliberate indifference to his serious medical needs by bestowing more deliberate indifference and negligence upon him, exacerbating his conditions and ultimately prolonging the infliction of unnecessary and wanton pain. *Perez v. Fenoglio,* 792 F.3d 768, 783 (7th Cir. 2015); *Murphy v. Lane,* 833 F.2d 106, 108 (7th Cir. 1987), "Denial of adequate medical treatment is a deprivation likely to dissuade a reasonable person from engaging in future First Amendment activity."

64.   Lastly, plaintiff Nowels has indeed met the third prong of a retaliation claim. On or about October 13, 2021, Nowels met with Moore in WCI's HSU and asked her why would she prescribe and increase the dosage of a medication that was exacerbating his serious medical condition, then lie to him about its side effects even as his condition worsened, and she responded, "the day that I no longer have to waste time fighting your lawsuit will be the day I'll be able to spend time ensuring you have the right medication." (See Exhibit-H for Decl. of Terry Thomas for testimony of statements made by defendant Moore). These statements by Defendant Moore clearly establish a casual connection between Nowels engaging in his protected First Amendment rights and the deliberately indifferent and negligent healthcare Moore bestowed upon Nowels in an attempt to deter his First Amendment activity in the future. *Id.*

**STATE CLAIMS**

CLAIM 3- MEDICAL NEGLIGENCE/MALPRACTICE- AGAINST DEFENDANT APNP MARY MOORE.

65.   Plaintiff Nowels reincorporates paragraphs 1 through 50 as they are stated fully therein.

66.   To make out a claim for medical negligence/malpractice in the state of Wisconsin, a plaintiff must prove the following four elements: (1) a breach of (2) a duty owed (3) that results

in (4) injury or injuries, or damages. *Gil v. Reed*, 381 F.3d 649, 658-59 (7th Cir. 2004); *Paul v. Skemp*, 242 Wis.2d 507, 625 N.W.2d 860, 865 (2001).

67.     First it must be recognized that Moore's Position Summary as an APNP for the WI-DOC, states, amongst other things, that 75% of her Goals and Work Activities include, but are not limited to: conducting physical assessments; establish[ing] medical diagnoses for acute, chronic and potential health problems; monitor, evaluate and manage follow-up care; and prescribe, regulate and monitor medications. Additionally, 5% of her Goals and Work Activities include, but are not limited to: utiliz[ing] information based on studies/research in evaluating the effectiveness of practices and to identify healthcare needs for inmates. (See Exhibit-J-0001 through 0004 for Position Summary as an APNP for the WI-DOC signed by Moore on August 20, 2019.)

68.     In addition to Moore's Goals and Work Activities stated in ¶ 67 of this complaint, Moore's "Knowledge and Skills" requirements include, but are not limited to: [a]bility to provide preventive services, care of episodic illness and injury, and manage stable chronic illnesses in a team relationship; [k]nowledge and advanced skill in the application of nursing theory, nursing process, and nursing standards of care; [k]nowledge of current communication and effective communication practices; and [e]xtensive knowledge of physical assessment, differential diagnosis, pathophysiology, pharmacology and management of acute and chronic health problems. (See Exhibit-J-0004 for aforementioned Knowledge and Skills requirements signed by Moore on August 20, 2019.)

69.     The aforementioned Goals and Work Activities, and Knowledge and Skills Requirements stated in ¶ 67 and ¶ 68 of this complaint, clearly establish a duty owed to patients, in this case,

Plaintiff Nowels, under the care of Defendant Moore. (See Exhibit-J-0001 through J-0004 for the Position Description and Position Summary of an APNP employed at the WI-DOC, signed and dated by Defendant Moore signed by Moore on August 20, 2019.)

70.     Moore chose to prescribe, continue and the prescription of, and increase the dosage of the contraindicated medication Desipramine Hydrochloride even as Nowels's serious medical needs worsened and became his chief complaint. These decisions made by Moore are contrary to the Goals and Work Activities, and Knowledge and Skills Requirements stated in ¶ 67 and ¶ 68 of this complaint, and ultimately led to Nowels enduring extreme pain and additional serious medical conditions which also warranted treatment. Moore's actions coupled with Nowels's subsequent injuries/damages clearly establish a claim of medical negligence/malpractice in the state of Wisconsin. (See Exhibit-J-0002 ¶ A4 for proof that Moore is required to properly regulate the medications of the patients in her care.)

71.     Moore knew she had prescribed Nowels a contraindicated medication, however, lied to him in multiple appointments about the medication's side-effects, maliciously allowing him to suffer as his serious medical conditions worsened. These decisions made by Moore are contrary to the Goal, Work Activities, and Knowledge and Skills Requirements stated in ¶ 67 and ¶ 68 of this complaint, and ultimately led to Nowels enduring extreme pain and additional serious medical conditions which warranted treatment. Moore's actions coupled with Nowels's subsequent injuries/damages clearly establish a claim of medical negligence/malpractice in the state of Wisconsin.

72.     Moore chose to speak to Nowels in a maliciously sarcastic manner regarding the deliberately indifferent, retaliatory and negligent prescription, continued prescription and

increase dosage of the contraindicated medication Desipramine Hydrochloride. Moore told Nowels "[t]he day I no longer have to waste time fighting your lawsuits will be the day I'll be able to spend time ensuring you have the right medication" when he questioned her regarding the intentional mishandling of this medication. These decisions made by Moore are contrary to the Goal, Work Activities, and Knowledge and Skills Requirements stated in ¶ 67 and ¶ 68 of this complaint, and ultimately led to Nowels enduring extreme pain and additional serious medical conditions which warranted treatment. Moore's actions coupled with Nowels's subsequent injuries/damages clearly establish a claim of medical negligence/malpractice in the state of Wisconsin.

CLAIM 4- CONTINUUM OF NEGLIGENT MEDICAL TREATMENT- AGAINST DEFENDANT APNP MARY MOORE.

73.     Plaintiff Nowels reincorporates paragraphs 1 through 50 as they are stated fully herein.

74.     To invoke the continuum of negligent medical treatment rule, a patient must show four elements: (1) a continuum of care (2) a continuum of negligent medical care (3) that the medical care was related to a single condition, and (4) that the precipitating factor in the continuum was the original negligent act. *Wiegert v. Goldberg*, 269 Wis.2d 695, 704 (Ct.App. 2004); *Westphal v. E. I. du Pont de Nemours & Co., Inc.*, 192 Wis.2d 347, 369-70, 531 N.W.2d 386 (Ct.App. 1995).

75.     There is no dispute that: (1) Moore provided healthcare services to Nowels; (2) she prescribed him Desipramine Hydrochloride, a contraindicated medication, on or about June 15, 2021, and despite his condition worsening, increased the dosage of said medication on or about September 13, 2021; (3) as a result of her prescriptions, on June 23, 2021, 100mg tablets of Desipramine Hydrochloride was delivered to Nowels and was to be taken one per dosage, and on

September 16, 2021, 75mg of Desipramine Hydrochloride was delivered to Nowels and was to be taken two at a time equaling 150mg per dosage. These decisions by Moore led to Nowels conditions of extreme constipation, extreme abdominal pain and extremely painful hemorrhoids exacerbating and causing additional ailments including, but not limited to: unbearable constipation, extreme headaches, profuse vomiting, extreme nausea, extreme abdominal pain, extreme rectal pain, a loss of appetite, etc., as a result of taking Desipramine Hydrochloride.

76.    Instead of simply discontinuing Desipramine Hydrochloride, Moore chose to prescribe harmful laxatives, including that of very harsh Magnesium Citrate cocktails, which ultimately led to Nowels contracting Gastritis, a very painful stomach condition.

## VII. PRAYER FOR RELIEF REQUESTED

WHERERFORE, Plaintiff Nowels respectfully prays that this court enter a judgment granting the following relief;

A.    Issue a declatory judgment stating the acts and omissions described herein this complaint violated the plaintiff's rights under The Constitution and laws of the United States and laws of the state of Wisconsin.

B.    Issue a preliminary and permanent injunction ordering:

   1.) Plaintiff never be placed under the care of Moore for the remainder of his incarceration;

   2.) Defendant Moore stop ignoring that serious medical needs of inmates in the WI-DOC; and

   3.) Defendant Moore stop retaliating against inmates for exercising their Constitutional Rights.

C.    Award Compensatory Damages in the following amount:

   1.) $50,000 for Defendant Moore.

D. Award Punitive Damages in the following amount:

1.) $50,000 for Defendant Moore.

E. Award Compensatory Damages in the amount be determined by a jury on the claim of medical negligence.

F. Award Punitive Damages in the amount to be determined by a jury on the claim of medical negligence.

G. Refund Plaintiff Nowels's costs in this suit.

H. Award any and all additional relief this court deems just, proper, and equitable.

## VIII. JURY DEMAND

Plaintiff Dionte Nowels demands a jury of no less than six persons to hear this case.

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged herein are true, except as to matters alleged on information and belief, as to those, I believe them to be true. Pursuant to 28 U.S.C. §1746, I, Dionte Nowels, certify under the penalty of perjury that the foregoing is true and correct.

Dated: June 12, 2024

MR. DIONTE JALEEL NOWELS #556397, pro se

FOX LAKE CORRECTIONAL INSTITUTION

W10237 LAKE EMILY ROAD

FOX LAKE, WI 53933