DIONTE NOWELS,

          Plaintiff,

     v.                                      Case No. 24-cv-0754-bhl

MARY MOORE,

          Defendant.

## SCREENING ORDER

     Plaintiff Dionte Nowels, who is currently serving a state prison sentence at Fox Lake Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated.[1] This matter comes before the Court on Nowels' motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

     Nowels has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). As required under 28 U.S.C. §1915(a)(2), Nowels has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint and has been assessed and paid an initial partial filing fee of $123.14. Nowels' motion for leave to proceed without prepaying the filing fee will be granted.

---

[1] Nowels filed a motion to supplement the complaint with supporting documents on June 24, 2024. Dkt. No. 3. The Court will grant the motion.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

2

alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

### ALLEGATIONS OF THE COMPLAINT

According to Nowels, he has for years suffered from extreme constipation, abdominal pain, and various rectal issues, including hemorrhoids and unidentified rectal discharge, for which he takes various medications. Nowels states that Defendant Mary Moore is his assigned advanced care provider. Nowels previously filed a lawsuit against Moore; his claims against her were dismissed at summary judgment; an appeal is pending. *See Nowels v. Schneider*, Case No. 21-cv-0089 (E.D. Wis.). On June 15, 2021, Moore prescribed Nowels desipramine hydrochloride to address his complaints of general body pain. Nowels asserts that he informed Moore that, if the medication causes constipation, he would like to pursue other options because of his abdominal and rectal conditions. Nowels requested that Moore give him a list of the medication's side effects, but she told him he did not need them. She also allegedly confirmed that desipramine hydrochloride does not cause constipation. Dkt. No. 1 at 3-4.

About a month later, on July 12, 2021, Nowels informed Moore that his abdominal and rectal conditions were worsening. He states that he told Moore that the bowel medications he had been taking were not working. He allegedly asked her to confirm that desipramine hydrochloride does not cause constipation and again requested a list of side effects. According to Nowels, Moore told him that she was reading the list of side effects as they spoke, and she confirmed it does not cause constipation. Dkt. No. 1 at 5.

Nowels explains that over the course of a couple months, he filed several health services requests about his worsening abdominal and rectal conditions. He was allegedly seen by several nurses, who instructed him to continue taking his medication and gave him magnesium citrate

3

cocktails to help alleviate his constipation. He asserts that these cocktails were very harsh on his stomach. It is not clear why, but on September 13, 2021, Moore allegedly increased the dosage of desipramine hydrochloride prescribed to Nowels. About a week later, on September 21, 2021, Nowels was examined by Moore. He asserts that he told her his constipation was getting worse and that his bowel medications were not working. He states that he again asked her to confirm that desipramine hydrochloride does not cause constipation. She allegedly confirmed that it does not. Dkt. No. 1 at 5-9.

On October 1, 2021, Nowels received information about desipramine hydrochloride, which he had requested from the health services unit. The insert stated that, contrary to Moore's representations, desipramine hydrochloride causes constipation. Nowels asserts that he stopped taking the medication. According to Nowels, he met with Moore on October 13, 2021, and asked her why she prescribed a medication that she knew would exacerbate his abdominal and rectal conditions. Moore allegedly responded, "The day I no longer have to waste time fighting your lawsuits will be the day I'll be able to spend time ensuring you have the right medication." Dkt. No. 1 at 9-11.

Nowels asserts that during the time he was taking desipramine hydrochloride, he lost thirty pounds from constant vomiting and loss of appetite. He asserts that his abdominal and rectal issues began to subside when he stopped taking the medication. On February 2, 2022, Nowels was taken to Waupun Memorial Hospital where an endoscopy was performed. He asserts that he was diagnosed with gastritis, which was caused by the excessive amount of magnesium citrate he had been given to combat the abdominal issues caused by the desipramine hydrochloride. Nowels explains that gastritis can be treated, but it cannot be cured. Dkt. No. 1 at 11-12.

4

# THE COURT'S ANALYSIS

"[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment; it asks: 1) "whether a plaintiff suffered from an objectively serious medical condition" and 2) "whether the individual defendant was deliberately indifferent to that condition." *Id*. (quoting *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc)). In light of this standard, Nowels states a claim that Moore was deliberately indifferent to his abdominal and rectal conditions when she persisted in prescribing a medication that worsened his symptoms despite his repeated requests that she confirm the medication's side effects.

Nowels may also proceed on a First Amendment retaliation claim. To plead a retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendant's decision to take the retaliatory action." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). Nowels alleges that Moore prescribed a medication she knew would worsen his abdominal and rectal conditions because he had previously sued her. Development of the record may determine that Nowels' previous lawsuit had no impact on Moore's alleged decisions, but at this stage, his allegations are sufficient to state a claim.

The Court also will exercise supplemental jurisdiction over a state law medical negligence/malpractice claim. Nowels does not, however, state a separate "continuum of negligent

medical treatment" claim. The "continuum of negligent medical treatment" rule is relevant to determining when a cause of action accrues for statute of limitations purposes. It is not a separate or distinct claim. *See Weigert v. Goldberg*, 269 Wis. 2d 695, 704-05 (Ct. App. 2004); *Nunley v. Kloehn*, 158 F.R.D. 614, 618 (E.D. Wis. 1994) ("where a continuum of negligent medical treatment is alleged, a plaintiff has a unitary cause of action covering the entire factual sequence, and is not obligated to bring more than one lawsuit; it says nothing about the legal theories, or claims, which may be asserted in bringing such an action").

Further, Nowels is not entitled to entry of a preliminary injunction ordering that he never again be placed under Moore's care, that Moore stop ignoring the serious medical needs of prisoners, or that Moore stop retaliating against prisoners for exercising their constitutional rights. *See* Dkt. No. 1 at 20. In the context of prisoner litigation, the scope of the Court's authority to issue an injunction is circumscribed by the Prison Litigation Reform Act (PLRA). *See Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2); *see also Westefer*, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage" (internal quotation marks and citation omitted)). Acknowledging the complexities of administering health care in the prison setting, especially considering staffing shortages, the Court is very reluctant to meddle in day-to-day decisions such as which prisoners a provider may treat. Nothing in the complaint would support the Court micromanaging the prison's staffing decisions, so Nowels' request for a preliminary injunction providing that relief will be denied. Further, the Constitution already

requires that providers not ignore serious medical conditions and that they not retaliate against prisoners. A preliminary injunction to that effect is therefore unnecessary.

Finally, Nowels sues Moore in her official capacity in addition to her individual capacity. A suit against a state official in her official capacity is a suit against the official's office; it is no different than a suit against the state itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Nowels' official capacity claims against Moore are therefore claims against the State or Wisconsin. Where a plaintiff seeks damages rather than injunctive relief, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* However, where a plaintiff seeks injunctive relief, such claims are permissible under §1983. These claims require that the entity's policy or custom have played a part in the constitutional violation. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Nowels seeks injunctive relief, but he does not allege that any policies or customs caused Moore's alleged deliberate indifference. Therefore, he may not proceed against Moore in her official capacity.

**IT IS THEREFORE ORDERED** that Nowels' motion for leave to proceed *in forma pauperis* (Dkt. No. 4) is **GRANTED**.

**IT IS FURTHER ORDERED** that Nowels' motion to supplement the complaint (Dkt. No. 3) is **GRANTED**.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Nowels' complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Mary Moore.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Moore shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Nowels is located.

**IT IS FURTHER ORDERED** that the agency having custody of Nowels shall collect from his institution trust account the $226.86 balance of the filing fee by collecting monthly payments from Nowels' prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Nowels is transferred to another institution, the transferring institution shall forward a copy of this Order along with Nowels' remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court

Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Nowels is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Nowels may find useful in prosecuting this case.

Dated at Milwaukee, Wisconsin on August 12, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge