DIONTE NOWELS,

        Plaintiff,

        v.                                                             Case No. 24-cv-0754-bhl

MARY MOORE,

        Defendants.

## DECISION AND ORDER

      Plaintiff Dionte Nowels, an inmate at Fox Lake Correctional Institution, is representing himself in this 42 U.S.C. §1983 action. He is proceeding on Eighth Amendment medical care, First Amendment retaliation, and state law medical malpractice/negligence claims against Defendant Mary Moore. Nowels' claims are all premised on his contention that Moore intentionally prescribed a medication that she knew would worsen his constipation and abdominal issues because she wanted to get back at him for filing a lawsuit against her. On May 19, 2025, Moore filed a motion for summary judgment. For the reasons discussed below, the Court will deny the motion.

## BACKGROUND

      At the relevant time, Nowels was confined at Waupun Correctional Institution, where Moore worked as an advanced practice nurse prescriber. Following a car accident in May 2015, Nowels has suffered from chronic pain in his back, left knee, and right ankle. He has had several surgeries on his knee and been diagnosed with facet joint disease with disc displacement in his back. Nowels has tried numerous pain medications to address his chronic pain issues. Some have been more effective than others, but because of Department of Corrections policies, many options

for pain relief are not available to him. Nowels also suffers from chronic constipation, abdominal pain, and rectal issues, for which he has been prescribed various interventions, including laxatives, stool softeners, and enemas. Dkt. No. 61 at ¶¶1-30, 37-38, 74-75, 98; Dkt. No. 52-1 at 45, 58-61[1]; Dkt. No. 66 at ¶5.

According to Nowels' medical records, on December 7, 2020, Moore prescribed 25mg of desipramine per day for five days. Desipramine is a tricyclic antidepressant that can be prescribed for pain management when traditional pain medications are not an option. About a week later, on December 15, 2020, Dr. Laura Sukowaty continued the order for desipramine and increased the dosage to 50mg. Per Nowels' medical record, Nowels' first dose at the increased dosage was on December 10, 2020, and, per Dr. Sukowaty's order, the prescription was to continue through June 23, 2021. Moore explains that whenever a medication is prescribed, the patient receives an informational packet describing the medication, contraindicated medications, and possible side effects. A copy of the educational packet is also saved to the patient's health care record. Nowels disputes that he received an information packet when desipramine was first prescribed, but he acknowledges that he could have requested the information packet from the health services unit at any time. Dkt. No. 61 at ¶¶1-30, 38, 74-75, 98; Dkt. No. 52-1 at 45, 58-61.

On January 20, 2021, about a month after he started taking desipramine, Nowels filed a complaint in the U.S. District Court for the Eastern District of Wisconsin against Moore alleging that she failed to treat his injuries after he fell down the stairs. *See Nowels v. Moore*, Case No. 21-cv-0089-scd (E.D. Wis.). About a month later, on February 24, 2021, Nowels submitted a medication refill request for desipramine. On March 25, 2021, the Court screened Nowels'

---

[1] In Moore's proposed statements of fact, the page citations to Nowels' medical records are off by two pages. So, for example, the relevant medical record in support of the proposed statement of fact at ¶31 is at page 45, not 43 as Moore cites. The Court includes the correct page citations.

complaint in Case No. 21-cv-0089-scd. According to Moore, she did not learn of the lawsuit until April 14, 2021. Dkt. No. 66 at ¶8; Dkt. No. 52-1 at 28; Dkt. No. 61 at ¶¶76-79.

About two months later, on June 15, 2021, , Moore examined Nowels for complaints of pain in multiple areas of his body, including his back, left thumb, neck, and left knee. Moore asserts that Nowels reported that he was not then taking any pain medication because desipramine had not been on the medication cart for four months. Moore states that Nowels agreed to restart desipramine and to taper up the dosage "as tolerated." She ordered desipramine to start at 50mg (the same dosage that Dr. Sukowaty had prescribed) and to taper up in seven days to 100mg. She also ordered an x-ray, ibuprofen, and capsaicin cream. Dkt. No. 61 at ¶51; Dkt. No. 52-1 at 62; Dkt. No. 66 at ¶16.

Moore highlights that most of the medications prescribed to Nowels for his pain have constipation as a potential side effect, although tricyclic antidepressants like desipramine have a lower risk of constipation than other medications that Nowels had taken. Moore asserts that, given Nowels' extensive history of reported pain, she believed that the benefits of pain management outweighed the risk of constipation as a side effect from taking the medication. Moore further notes that the risk of constipation was mitigated because Nowels had already been prescribed medications and treatments to help prevent, regulate, and treat the symptoms of constipation. Dkt. No. 161 at ¶¶33-37.

According to Moore, Nowels did not discuss constipation with her at the June 15, 2021 appointment, nor did he raise concerns about desipramine causing constipation. But Nowels insists that he voiced his concerns about desipramine possibly exacerbating his constipation issues. He states that he informed Moore that, given his history of extreme constipation and abdominal pain, he would prefer to explore other options if desipramine could cause constipation. Nowels also

3

asserts that he asked for a list of all side effects related to this medication, but Moore told him that he did not need the medication information because she knew that desipramine does not cause constipation. Dkt. No. 61 at ¶51; Dkt. No. 66 at ¶¶17-18.

About a month later, on July 12, 2021, Nowels filed a health services request complaining about constipation, abdominal pain, and rectal issues. He stated that he was in "EXTREME" pain from not having had a bowel movement in nearly a week. He was seen two days later by a nurse. Nowels asserts that he informed her that the bowel medications he was taking were not effective, but she told him to keep taking them. She also gave him magnesium citrate, which is a laxative. A week later, Nowels was seen by a different nurse for the same complaints. According to Moore, the nurse's objective findings, including a flat, soft abdomen with active bowel sounds, are not consistent with Nowels' complaints of pain and constipation. The nurse noted that Nowels had been given magnesium citrate the day before with results later that night. The nurse refilled Nowels' constipation medication, ordered fiber supplements, and reminded him that he had a colonoscopy scheduled. Dkt. No. 61 at ¶¶53- ; Dkt. No. 66 at ¶¶22; Dkt. No. 52-1 at 19-20, 24; Dkt. No. 3-1 at 23.

On July 30, 2021, Nowels was seen by Dr. Cheryl Jeanpierre for continued complaints of constipation, abdominal pain, and rectal issues. He informed her that the bowel medications were not working and that his constipation was getting worse. He stated that he could barely tolerate the magnesium citrate. According to Nowels, Dr. Jeanpierre told him to continue with his bowel medications and she ordered an MRI for his continued left thumb pain. Nowels submitted additional health services request about his continuing abdominal pain, stating that his stomach was in extreme pain. On August 22, 2021, he was seen by a nurse on an emergency basis because he complained that he had not had a bowel movement in about ten days. Nowels stated that his

4

pain was at an eight out of ten. The nurse gave Nowels another magnesium citrate after noting that Nowels stated he could tolerate magnesium citrate well. Dkt. No. 66 at ¶¶24-34; Dkt. No. 52-1 at 18; Dkt. No. 63-1 at 37-38, 54; Dkt. No. 3-1 at 24-30.

On August 24, 2021, Nowels was seen by another nurse for the same complaints. She told him to continue taking his bowel medications, even after Nowels told her the medications were ineffective. Nowels also complained about his knee pain and asked for ibuprofen. The nurse told him he could alternate Tylenol and ibuprofen and that he would be getting stronger medication after his surgery. Nowels informed her that he would wait for that. Nowels saw yet another nurse on September 9, 2021, for complaints of "extreme pain in multiple areas," "an ongoing headache," dizziness, nausea, extreme constipation, and vomiting. The nurse's notes indicate that Nowels was not drinking enough water or exercising, although Nowels stated in his health services requests that he was drinking "pitchers of water" and taking his bowel medications. The nurse ordered "protocol medication." Dkt. No. 66 at ¶¶24-34; Dkt. No. 52-1 at 18; Dkt. No. 63-1 at 37-38, 54; Dkt. No. 3-1 at 24-30.

Later that same day, the nurse consulted with Moore about Nowels' constipation, abdominal pain, and rectal issues. A few days later, on September 13, 2021, Moore increased Nowels' dosage of desipramine from 100mg to 150mg. She made no adjustments to his bowel medications. On September 18, 2021, Nowels submitted an information request complaining about the treatment he was receiving for his constipation and abdominal pain. He stated that he still was in extreme pain in multiple areas in the front of his abdomen and that pain had now spread to his left side and his back. He noted that he uses the bathroom only once every nine days or so and that the only response he has received is to have "laxatives shoved down [his] throat" even though he has stated many times that they do not work. The health services manager forwarded

5

the information request to Moore, who responded (more than a week later) that she had addressed Nowels' concerns. Dkt. No. 3-1 at 32-35; Dkt. No. 63-1 at 38, 54.

On September 21, 2021, Moore saw Nowels for complaints of back pain and constipation. Moore noted that the recent dosage increase for desipramine was too recent to know if it would sufficiently address Nowels' pain. Nowels asked that she add a prescription of Tylenol for his pain, which she did, and she noted that an appointment at the pain clinic had been scheduled. With regard to his constipation, Moore noted that Nowels had had a bowel movement a week earlier and that he was taking all of his bowel medications. Nowels asserts that he informed Moore that the bowel medications and enemas had not been effective; he also complained of generalized abdominal pain. Nowels asserts that he asked her if she was sure that desipramine does not cause constipation, and she confirmed that it does not. Moore noted that the x-ray confirmed he was constipated and that he has a colonoscopy scheduled soon. She continued his orders for the bowel medications, gave him magnesium citrate, and ordered enemas weekly, as needed. Dkt. No. 61 at ¶¶56 ; Dkt. No. 52-1 at 74; Dkt. No. 66 at ¶¶40-41.

Nowels asserts that a couple of days later, he asked the health services unit to provide him with all available information on desipramine. On September 28, 2021, Nowels had a colonoscopy, which indicated external hemorrhoids, but no abnormalities in the colon. A few days later, on October 1, 2021, Nowels received the desipramine information sheet and learned that desipramine may cause constipation. Nowels stopped taking desipramine that same day. Nowels asserts that he wrote a request slip addressed to Moore and accused her of lying about desipramine's potential side effects. Moore responded on October 7, 2021, confirming that constipation is a known side effect of desipramine and highlighting that he had been prescribed many medications for constipation. Dkt. No. 66 at ¶¶42-45, 48; Dkt. No. 63-1 at 52.

6

Moore saw Nowels for complaints of constipation and abdominal pain on October 13, 2021. According to Moore, Nowels told her that his constipation had resolved on October 10, 2021, after he decided to stop taking desipramine about a week earlier. Moore asserts that she informed him that it can be dangerous to abruptly stop taking a medication and she explained the taper schedule to ween him off the medication safely. Nowels asserts that he asked her why she would prescribe and even increase the dosage of a medication that she knew would exacerbate his constipation. According to Nowels, Moore responded, "The day I no longer have to waste time fighting your lawsuits will be the day I'll be able to spend time ensuring you have the right medications." Dkt. No. 61 at ¶¶58-61; Dkt. No. 66 at ¶46.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an

element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Nowels asserts that Moore violated the Eighth Amendment when she failed to address his complaints of severe abdominal pain and constipation and instead persisted with a medication to address another condition even though she knew one of the medication's side effects was exacerbating his constipation. He further asserts that Moore continued with this course of treatment to retaliate against him for filing a lawsuit against her. Finally, Nowels asserts that her actions were negligent and caused him injury. The Court will address each claim in turn.

**1. A jury could reasonably conclude that Moore was deliberately indifferent to Nowels' complaints of constipation and abdominal pain.**

To prevail on a medical care claim under the Eighth Amendment, a plaintiff must prove that a prison official intentionally disregarded a known, objectively serious medical condition that posed an excessive risk to the plaintiff's health. *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (citations omitted). Persisting in treatment known to be ineffective can constitute deliberate medical indifference, provided that the doctor was subjectively aware that the treatment plan was ineffective. *Petties v. Carter*, 836 F.3d 722, 729–30 (7th Cir. 2016); *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020). It is not enough that the plaintiff believes the treatment was ineffective or disagrees with the doctor's chosen course of treatment. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006); *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). The challenged plan must deviate so substantially from accepted professional judgment that no reasonable physician would reach the same judgment. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

Moore explains that Nowels' health issues are complicated—he suffers from significant, chronic pain in his back and legs but the medications available to him to treat his pain are limited.

8

Further complicating matters is that Nowels has a long-standing struggle with constipation, which is a common side effect of many of the medications available to treat his pain. Moore asserts that she exercised her professional judgment and concluded that the benefits of potential pain relief outweighed any risk that the medication would cause constipation. Moreover, Moore explains that she knew Nowels was already receiving medications to treat his constipation, *e.g.*, laxatives, enemas, fiber, so she concluded that, even if Nowels did experience constipation as a side effect, other interventions would address it.

Based on the foregoing, no jury could reasonably conclude that Moore was deliberately indifferent to Nowels' serious medical conditions when she first prescribed desipramine in December 2020 to address Nowels' complaints of pain. Moore started with a conservative dosage of 25mg daily, which was increased to 50mg daily a week later by a different provider. It is unclear if Nowels' constipation worsened while taking desipramine at this dosage, but nothing in the record suggests that it did. Accordingly, a jury also could not reasonably conclude that Moore was deliberately indifferent when she reinstated the prescription in June 2021 after learning that Nowels had not requested refills of the medication for several months, as there is no evidence suggesting that Nowels informed Moore that he had experienced negative side effects such as increased constipation while taking the medication several months earlier.

The evidence does suggest, however, that desipramine did not provide Nowels with adequate pain relief the first time it was prescribed. First, Nowels renewed the prescription only one time, even though Dr. Sukowaty had ordered it for a year. Presumably, if Nowels had been experiencing pain relief, he would have continued to refill the prescription. Second, Moore decided to increase the dosage from 50mg daily to 100mg daily, which would have been unnecessary had the medication been effective at the previously prescribed dosage. Still, given

9

that Nowels' had not complained of side effects at the 50mg dosage, no jury could reasonably conclude that Moore was deliberately indifferent to the risk of constipation when she ordered a taper-up of the dosage "as tolerated."

Unfortunately, Nowels did not tolerate the dosage increase. Within weeks of taking the increased dosage, he began to complain with increasing desperation of severe constipation, abdominal pain, nausea, and vomiting. He would go for more than a week without a bowel movement and had to regularly ingest magnesium citrate and give himself enemas to obtain minimal and temporary relief. Moore asserts that Nowels offers no evidence that she was aware of his complaints, arguing that she could not have been deliberately indifferent to a condition she did not know about. The evidence shows, however, that a nurse consulted with Moore on September 9, 2021 about Nowels' ongoing constipation, abdominal pain, and rectal issues. Four days later, despite knowing that desipramine may cause constipation and despite being told by a nurse that Nowels had been complaining of increasingly severe and painful constipation that his prescribed medications did not alleviate, Moore increased the desipramine dosage from 100mg to 150mg. At this point, as acknowledged by Moore, *see* Dkt. No. 63-1 at 56, Nowels was submitting more health services requests about his constipation, abdominal pain, and/or rectal issues than any other condition. Yet, Moore increased the dosage of the medication that carried a side effect of constipation and made no change to his bowel medications, which Nowels had repeatedly reported were ineffective.

Moore examined Nowels about a week after she increased the dosage. Nowels asserts that he told her that the bowel medications were not effective and that he had generalized abdominal pain. According to Nowels, he asked Moore if the desipramine could be causing the constipation,

10

and she said no. Moore then reordered the bowel medications that Nowels had stated were ineffective.

Based on the foregoing, a jury could reasonably conclude that Moore was deliberately indifferent to Nowels' constipation when she: (1) dismissed his concerns that desipramine could be worsening his constipation despite knowing that constipation was a possible side effect; (2) increased the dosage of desipramine after being informed that Nowels was complaining of severe constipation, nausea, and vomiting; and (3) persisted in prescribing bowel medications that Nowels informed her were ineffective to address his severe constipation and abdominal pain. Moore is therefore not entitled to summary judgment on this claim.

2. **A reasonable jury could find that Moore retaliated against Nowels when she increased the dosage of desipramine from 100mg to 150mg.**

Nowels' retaliation claim presents a much closer call at summary judgment. To prevail on a retaliation claim, a plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendant's decision to take the retaliatory action." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

Nowels satisfies the first element of showing that he engaged in protected activity. He explains that he filed a lawsuit against Moore in January 2021, which Moore learned about in April 2021. Moreover, the Court concludes that he has presented enough evidence to satisfy the second element. Were the jury to conclude that Moore violated the Eighth Amendment by persisting in a treatment that she knew was harming Nowels without acknowledging or addressing that harm, a jury could reasonably conclude that Nowels suffered a deprivation that would likely deter him from engaging in First Amendment activity in the future (*i.e.*, he may refrain from seeking to

11

enforce his constitutional rights against Moore in a new lawsuit to avoid the risk of intentionally inadequate medical care).

However, it is a close call whether a jury could reasonably conclude that Nowels satisfies the third element—that the lawsuit against Moore motivated Moore to persist in a treatment that she knew was ineffective and harmful. The only evidence Nowels presents is a statement that Moore denies making. According to Nowels, after he stopped taking desipramine and confronted Moore by asking her why she would prescribe and increase the dosage of a medication that she knew would worsen his constipation issues, Moore responded, "The day I no longer have to waste time fighting your lawsuits will be the day I'll be able to spend time ensuring you have the right medications." This sarcastic remark may have been nothing more than a throwaway comment made in frustration in response to Nowels accusing her of trying to harm him when she was actually trying to help him by addressing his complaints of pain, but a jury could also reasonably conclude that the comment reveals Moore's true motive for persisting with her chosen course of treatment in the face of Nowels' worsening constipation challenges. Moore is therefore not entitled to summary judgment on this claim.

### 3. Moore is not entitled to qualified immunity.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a court reviews a defendant's motion for summary judgment based on qualified immunity, the court considers "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether the constitutional right was clearly established at [that] time." *Gonzalez v. City of*

12

Case 2:24-cv-00754-BHL | Filed 09/23/25 | Page 12 of 14 | Document 67

*Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (citing *Pearson*, 555 U.S. at 232); *Estate of Clark v. Walker*, 865 F.3d 544, 549–50 (7th Cir. 2017).

Here, as explained above, the standard for liability under the First and Eighth Amendments is well established. And for the reasons already explained, the evidence viewed in the light most favorable to Nowels could allow a jury to find in his favor. Under these circumstances, Moore is not entitled to qualified immunity. *See Chilcutt v. Santiago*, No. 22-2916, 2023 WL 4678583, at *3 (7th Cir. July 21, 2023) ("[A] district court properly denies a motion for summary judgment based on qualified immunity when the facts, viewed in the light most favorable to the plaintiff, create a genuine dispute about whether the defendants' actions violated a clearly established constitutional right.") (citing *Estate of Clark v. Walker*, 865 F.3d 544, 551 (7th Cir. 2017)).

**4. A jury could reasonably find in Nowels' favor on a medical malpractice or medical negligence claim.**

"In the medical malpractice setting, Wisconsin requires expert testimony to establish medical negligence except in situations where the errors were of such a nature that a layperson could conclude from common experience that such mistakes do not happen if the physician had experienced proper skill and care." *Gil v. Reed*, 381 F.3d 649, 659 (7th Cir. 2004) (citations omitted). Importantly, as acknowledged by the Seventh Circuit, Wisconsin's preference for expert testimony as to a medical provider's conduct is a rule of evidence, not a substantive rule of law. *Gil*, 381 F.3d at 659. In federal court, no expert testimony is needed when a plaintiff's symptoms are within a layperson's grasp. *Id.*

Here, construing the facts in Nowels' favor, Moore made a deliberate choice to increase the dosage of a medication that she knew carried the risk of a specific side effect despite knowing that Nowels was experiencing worsening symptoms of that side effect. And, despite knowing of Nowels' increasingly severe and unrelenting symptoms, Moore failed to make any changes to the

13

medications prescribed to address those symptoms even after Nowels repeatedly stated that the medications he had been prescribed were ineffective. It is well within a layperson's purview to know that a medication may cause harmful and painful side effects and that failure to try a different medication or provide effective treatments to mitigate the symptoms of the side effect can result in unnecessary pain and discomfort. No doubt any medical provider, including Moore, can testify that persisting with a non-lifesaving medication that the provider has been informed is causing significant harm as a side effect without acknowledging the harm or making any effort to address the harm does not meet the standard of care. Accordingly, summary judgment on this claim is not warranted. *See Gil*, 381 F.3d at 658-61.

## NEXT STEPS

Nowels' claims will proceed to trial. Given the difficulty of trying a case before a jury, including offering a coherent opening statement and closing argument, presenting and examining witnesses, and locating and introducing evidence, the Court will attempt to recruit a volunteer lawyer to represent Nowels at trial. The demand for volunteer lawyers is high, but the supply is low. Few lawyers have the time, ability, or experience to volunteer for cases such as these. The Court therefore encourages Nowels to be patient as it makes efforts to recruit a lawyer to represent him at trial. The Court will promptly notify Nowels in the event a lawyer volunteers to represent him. In the meantime, the Court encourages the parties to explore whether settlement is possible.

**IT IS THEREFORE ORDERED** that Defendant's summary judgment motion (Dkt. No. 49) is **DENIED**.

Dated at Milwaukee, Wisconsin on September 23, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge
